### U.S. WEST COMMUNICATIONS, INC., Plaintiff,

v.

Robert J. HIX, Brent Alderfer, and Vincent Majkowski, MFS Communications, Co., Inc., MFS Intelenet of Colorado, Inc., TCG Colorado, Teleport Communications Group, Inc. And ICG Telecom Group, Inc., Defendants.

Civil Action Nos. 97–D–152, 97–D–387, 97–D–2047 and 97–D–2096.

United States District Court, D. Colorado.

Dec. 5, 1997.

**14**

B. Lawrence Theis, Bobbee J. Musgrave, Perkins Coie, Denver, CO, for Plaintiff.

Craig Joyce, Walters & Joyce, Denver, CO, Anthony M. Marquez, Asst. Atty. Gen., Denver, CO, Paul M. Gordon, Oakland, CA, Charles B. Hecht, Nichols & Hecht, LLC, Denver, CO, Richard L. Fanyo, Dufford & Brown, P.C., Denver, CO, Robert Pomeroy, Joseph Halpern, Holland & Hart, Englewood, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. *INTRODUCTION AND BACKGROUND*

The passage by Congress of the landmark Telecommunications Act of 1996 ("the Act") marks the beginning of a new era in the local telephone market. The Act, at its core, is designed, among other things, to end monopolies in the local telephone market and open the market to competition. Incumbent local exchange carriers ("ILECs") such as U.S. West Communications, Inc. ("USWC"), the plaintiff herein, are required to "interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers" and to negotiate in good faith to open their local telephone network to competition and interconnect with other carriers in accordance with the duties set forth in the Act. *See* 47 U.S.C. § 251. The Act delegates authority to state utilities commissions to (i) arbitrate disputes regarding interconnection agreements; (ii) determine whether the agreements are in compliance with the Act; and (iii) approve or reject the final agreements. *Id.,* §§ 251–252.

The specific issue that is before the Court is the appropriate standard of review to be applied to the Colorado Public Utilities Commission's decision approving certain interconnection agreements pursuant to 47 U.S.C. § 252(e)(1).[1] This Court has jurisdiction

---

1. The standard of review is to be determined as  to all the consolidated cases except 97–D–387.

over the consolidated cases pursuant to 47 U.S.C. § 252(e)(6) which states that "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." Further, Section 252(e)(4) provides that "[n]o State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section."

The Act does not elucidate either the scope of review or the standard of review that should apply to consideration of the issues before me. Further, it does not appear that, to date, any other federal court has determined the appropriate standard of review. In my Order on Intervention, Discovery and Scope of Review Matters dated August 5, 1997, I previously decided that the scope of review in this case is limited to the administrative record. *See United States v. Carlo Bianchi and Co.*, 373 U.S. 709, 714, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963) ("where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, ... consideration is to be confined to the administrative record"); *Franklin Savings Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992) (same). The scope of review is different than the standard of review. *Franklin Savings Ass'n*, 934 F.2d at 1136. As the Tenth Circuit explained in *Franklin:*

> The scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision. The standard of judicial review refers to how the reviewing court will examine that evidence.

*Id.*

In determining the standard of review, it is necessary to understand the Act's statutory scheme as it applies to the state commissions, in this instance, the Colorado Public Utilities Commission ("PUC"). Pursuant to § 252(c)(1) of the Act, codified at 47 U.S.C. § 252(c)(1), the ILEC is required to negotiate with other telecommunications carriers for interconnection, access to unbundled elements or resale of services. If an agreement on all outstanding issues cannot be reached, a party may request that the state commission conduct arbitration pursuant to § 252(b)(1) of the Act. The state commission is required to limit its consideration of any petition for arbitration to the issues set forth in the petition and response thereto. 47 U.S.C. § 252(b)(4)(A). The commission may require the parties to provide additional information necessary to reach a decision on the unresolved issues. *Id.*, § 252(b)(4)(B). However, if any party fails or refuses to provide such additional information, the state commission may proceed on the basis of the best information available to it. *Id.*

§ 252(e)(1) of the Act provides that any agreement reached through negotiation or arbitration must then be submitted to the state commission for its approval. In determining whether to approve or reject the agreement, there are two different standards depending on whether the agreement is negotiated or arbitrated. In reviewing negotiated agreements, the state commission may only reject the agreement if "(i) if the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement; or (ii) the implementation of such agreement or portion is not consistent with the public interest, convenience and necessity." 47 U.S.C. § 252(e)(2)(A). By contrast, in reviewing arbitrated agreements, the state commission is directed to reject such agreements (or a portion thereof) only upon a finding that "the agreement does not meet the requirements of section 251 of this title, including the regulations prescribed by the Commission pursuant to section 251 of this title, or the

As to that case, on December 2, 1997, I issued an Order to Show Cause requiring briefing as to whether this Court has jurisdiction over the state law claims alleged therein and, if so, what the appropriate standard of review is as to those claims. This briefing is to be submitted by December 20, 1997, so the issue of the standard of review is not yet ripe in that case. Thus, this Order does not apply to 97–D–387.

standards set forth in subsection (d) of this section." *Id.*, § 252(e)(2)(B).

As to either type of agreement, the state commission must approve or reject the agreement, but is required to make written findings only as to any deficiencies in the agreement. *Id.*, § 252(e)(1). The Act contains no requirement that a hearing be held. If the state commission fails to act within the timetables provided in the Act, the Federal Communications Commission ("FCC") assumes the state commission's responsibilities under the Act. *Id.*, § 252(e)(5).

## II. *THE PARTIES' RESPECTIVE POSITIONS AS TO THE STANDARD OF REVIEW*

■ The parties to these consolidated actions do not agree on the appropriate standard of review. USWC asserts that the proper standard of review is de novo as to all issues. USWC argues that the issue as framed by Congress is a legal one—whether the agreements imposed upon USWC by the PUC meet the requirements of the Act. Accordingly, USWC asserts that the Court should apply a de novo standard of review and accord no deference to the PUC's determinations. In support thereof, USWC argues that had Congress intended that deference be accorded to the state commissions, it would have left review of their decisions to state courts where state agencies are given deference. In contrast, federal courts do not defer to state agencies on questions of federal law since such agencies are not subject to Congressional oversight and they lack expertise in interpreting and implementing federal law. *Amisub (PSL), Inc. v. State of Colorado Dept. of Social Services,* 879 F.2d 789 (10th Cir.1989), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

Sprint Communications Company L.P. ("Sprint"), MCIMetro Access Transmissions Services, Inc. ("MCI"), and Intervenor AT & T of the Mountain States, Inc. ("AT & T") assert that the standard of review is de novo as to questions of law. They agree with USWC that a state agency's interpretation of

federal law is not entitled to the deference generally accorded a federal agency based on the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). However, as to questions of fact and mixed questions of fact and law, Sprint, MCI and AT & T urge the Court to apply the arbitrary and capricious standard. They assert that deference in connection with such issues is appropriate because of the unique role Congress assigned to state commissions and the considerable expertise of the state commissions with respect to the highly technical issues involved in their arbitration and review of interconnection agreements.

TCG Colorado and Teleport Communications Group, Inc. ("TCG"), ICG Telecom Group, Inc. ("ICG"), and MFS Communications, Inc. and MFS Intelenet of Colorado ("MFS") assert that the appropriate standard of review is one modeled after the Administrative Procedure Act ("APA"); namely, the arbitrary and capricious standard of review.[2] *See* 5 U.S.C. § 706(2)(A). They argue that this standard best fits the mandate that Congress gave to the state commissions in interpreting the Act and implementing regulations, and the substantial expertise that state commissions possess in regulating intrastate telecommunications. However, TCG, ICG and MFS acknowledge that even under the APA model, the standard of review as to questions of law is de novo. Thus, it appears that the parties differ primarily in their views as to what constitutes a question of law.

## III. *ANALYSIS*

■ The Act sets out a unique framework which permits state commissions to arbitrate and approve interconnection agreements. This framework obviously recognizes the various state commissions' expertise in technical matters related to intrastate telecommunications where state commissions have the authority both to conduct arbitrations regarding the interconnection agreements as well as

---

**2.** These parties acknowledge that the APA itself is not controlling since it applies only to "authorit[ies] of the Government of the United States". *See* 5 U.S.C. § 551(1). However, they argue that the general model set out by the APA should be adopted.

to enter an order approving or rejecting such agreements. Notwithstanding this apparent concession to the expertise of state commissions, the Act mandates that an aggrieved party petition the federal district court for review of whether the approved agreements meet the requirements of the Act. 47 U.S.C. § 252(e)(6). State court review of these issues is precluded. *Id.*, § 252(e)(4). Because of the unique framework of the Act, it does not appear that there is an analogous statutory scheme that assists me with the standard of review determination. However, I find instructive those decisions where courts have articulated the standard of review applicable to a federal court's review of agencies' determinations of federal law in other contexts.

First, I note that the Act delegates authority to state, rather than federal, agencies regarding the issues that are before this Court. The Tenth Circuit holds that a "state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency." *Amisub*, 879 F.2d at 796. MFS, TCG and ICG argue that deference is appropriate because the state commissions, including the PUC, are given broad authority under the Act to determine compliance of the agreement with the Act, and the commissions have substantial expertise in regard to the technical matters they are called upon to decide. In other words, they argue that the state commission performs functions similar to a federal agency and thus should be given deference pursuant to the principles of *Chevron* and its progeny.

*Chevron* held that "considerable weight should be given to an executive department's construction of a statutory scheme it is entrusted to administer." 467 U.S. at 844, 104 S.Ct. at 2782. The Supreme Court further stated, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782; *see also Mountain Side Mobile Estates Partnership v. Sec. of Housing and Urban Development*, 56 F.3d 1243, 1248 (10th Cir.1995) (where federal agency was

explicitly delegated by Congress " 'the authority to elucidate a specific statutory provision, the agency's interpretation is given controlling weight unless arbitrary, capricious, or manifestly contrary to the statute.... [a]bsent such an explicit delegation, the agency's interpretation generally controls if it is reasonable and consistently applied' ") (quoting *New Mexico Dep't of Human Servs. v. Department of Health & Human Servs. Health Care Financing Admin.*, 4 F.3d 882, 884–85 (10th Cir.1993)).

I find that even though the state commissions are given authority to interpret certain portions of the Act, *Chevron* and its progeny are not controlling. Many of the reasons why deference is given to federal agencies in those cases do not apply here. For example, deference is given federal agencies because "their activities are subject to continuous congressional supervision by virtue of Congress's powers of advice and consent, appropriation, and oversight." *Kenaitze Indian Tribe v. Alaska*, 860 F.2d 312, 316 (9th Cir. 1988), *cert. denied*, 491 U.S. 905, 109 S.Ct. 3187, 105 L.Ed.2d 695 (1989). The parties do not dispute that there is no congressional oversight of state commissions under the Act.

Second, state commissions, while having experience in regulating local exchange carriers in intrastate matters, have little or no expertise in implementing federal laws and policies and do not have the nationwide perspective characteristic of a federal agency. Thus, giving deference to state commission determinations might only undermine, rather than promote, a coherent and uniform construction of federal law nationwide. *See Turner v. Perales*, 869 F.2d 140, 141 (2nd Cir.1989) (deference not appropriate to state agency because "[a]lthough Congress may have designed this plan as one of 'cooperative federalism,' in which state agencies are given broad responsibility and latitude in administering welfare assistance programs, the federal scheme does not envision any unitary or uniform application from state to state."). Further, I find that state commissions do not have extensive experience or expertise in the specific mandate of the Act—promoting competition in the local exchange market, because of the recent passage of the Act in

1996. *See Kenaitze,* 860 F.2d at 316 ("deference to a federal agency's interpretation of a statute is based in part on the expertise it possesses in implementing federal policy in the general subject area").

Accordingly, I think that the controlling cases on the standard of review are *Amisub* and *Colorado Health Care Assoc. v. Colorado Dept. of Social Services,* 842 F.2d 1158 (10th Cir.1988). In *Colorado Health Care,* the Tenth Circuit was called upon to decide whether the decision of the Colorado Department of Social Services to amend its Medicaid plan, which was ultimately subject to federal agency review by the Heath Care Financing Administration, "resulted in violation of the Medicaid standard mandated by the Boren Amendment ... [c]odified within [federal law]". *Id.* at 1161. In response, the Tenth Circuit held:

> Our review is limited. Our only task is only to determine whether the agency conformed with controlling statutes.... We can determine whether federal law has been violated.

*Id.* at 1164. The Tenth Circuit further explained that "[i]f the [agency] ha[s] met the specific requirements of federal and state law, then we must defer to the agency's exercise of discretion unless the [state agency] acted arbitrarily or capriciously." *Id.* at 1165. "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenged such action." *Id.* at 1164. "The same presumption of validity applies to a state agency as to a federal agency." *Id.*

The Tenth Circuit clarified this standard in *Amisub.* It stated that the court's role is to "determine whether the [agency's action] is procedurally and substantively in compliance with the requirements of the [federal act] and its implementing regulations, and not limit its analysis to whether the nonadjudicatory agency findings are arbitrary and capricious." *Id.,* 879 F.2d at 795. This issue of procedural and substantive compliance with federal law is not accorded the deference shown to a federal agency. *Id.* at 795–96.

In other words, the *first* inquiry of the court is whether the agency action "resulted in noncompliance with the federal statute and regulations." *Id.* at 795 (quoting from *Colorado Health Care,* 842 F.2d at 1165) (emphasis added). "This is an issue of law, subject to de novo review in federal court." *Id.; see also Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services,* 31 F.3d 1536, 1544 (10th Cir.1994); *Kansas Hospital Assoc. v. Whiteman,* 835 F.Supp. 1556, 1567 (D.Kan.1993), *aff'd,* 36 F.3d 1106 (10th Cir.1994). All other issues are reviewed under an arbitrary and capricious standard. *Amisub,* 879 F.2d at 795.

■ The arbitrary and capricious standard that will be applied to all issues other than "questions of law" as defined by *Amisub* is "highly deferential; the agency's action is presumed valid if a reasonable basis exists for its decision." *Amisub,* 879 F.2d at 800. However, "the presumption of validity 'is not to shield [the agency's] action from a thorough, probing, in-depth review.'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). Thus, the court must determine whether the agency action "'was based on a consideration of the relevant factors' and examine 'whether there has been a clear error of judgment.'" *Friends of the Bow v. Thompson,* 124 F.3d 1210, 1215 (10th Cir.1997) (quoting *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 824); *see also Amisub,* 879 F.2d at 800. "Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Friends of the Bow,* 124 F.3d at 1215 (quotation omitted). "The Court is not empowered to substitute its judgment for that of the agency." *Id.*[3]

---

**3.** I do not think that the substantial evidence standard applies to the facts and/or mixed questions of law and fact because it applies only in certain specified circumstances which are not applicable here or where the statute expressly provides for a hearing, which this statute does

To summarize, the standard of review to be applied in this case is as follows. The first inquiry of this Court in reviewing the interconnection agreements approved by the PUC is whether the PUC's action was procedurally and substantively in compliance with the Act and the implementing regulations. This is a question of law which must be reviewed de novo. If the PUC's action is found to be in compliance with federal law and regulations, then the PUC will be given deference, through application of the arbitrary and capricious standard, as to all other issues.

The foregoing standard does not rely on technical distinctions between "questions of law" and "questions of fact" or "mixed questions of law and fact" as those terms have been defined by other cases. Consequently, the parties are directed to avoid use of those labels in arguing how the standard of review applies to the specific issues that will arise in this case. Instead, the parties are ordered to determine whether the issues pertain to a "question of law" as defined by *Amisub*; namely, whether the issue involves a determination of the PUC's procedural or substantive compliance "with the requirements of the [Telecommunications Act] and its implementing regulations" and whether the PUC "ha[s] met the specific requirements of federal and state law." *Amisub*, 879 F.2d at 795–96. If the issue involves such a determination, it will be reviewed under the de novo standard. If it does not, it will be reviewed under the arbitrary and capricious standard.[4]

I believe that the standard of review articulated in this ruling captures the essence of pertinent case authorities and strikes an appropriate balance between acknowledgement of the technical expertise the state commissions have regarding many facets of intrastate telecommunications, the novel nature of the mission given to state commissions, and the duty of this court to make sure that state agencies are appropriately applying federal law. This standard of review is also consistent with a number of other federal courts that have been called upon by statute to review the actions of a state agency. *See Turner*, 869 F.2d at 141; *Ritter v. Cecil County Office of Housing and Comm. Development*, 33 F.3d 323, 327–28 (4th Cir.1994); *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491, 1495–96 (9th Cir.1997), *petition for cert. filed*, 65 U.S.L.W. 3755 (U.S. Apr. 28, 1997) (No. 96–1742); *Kenaitze*, 860 F.2d at 315–16.

Accordingly, it is

ORDERED that the appropriate standard of review in the consolidated cases, except case number 97–D–387, is the standard adopted herein.

---

not. *See Overton Park*, 401 U.S. at 414–15, 91 S.Ct. at 822–23.

4. Parenthetically, I note that even under the arbitrary and capricious standard advocated by ICG, MFS and TCG, the deferential standard of review does not apply to questions of law, which are subject to de novo review. *Mountain Side Mobile Estates Partnership*, 56 F.3d at 1250. As the Tenth Circuit stated therein, " '[T]he [f]ailure to apply the correct standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.' " *Id. See also Fed. Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981); *Railroad Comm'n of Texas v. Fed. Energy Regulatory Comm'n*, 874 F.2d 1338, 1344 (10th Cir.1989); *Phillips Petroleum Co. v. Fed. Energy Regulatory Comm'n*, 786 F.2d 370, 374 (10th Cir.1986), *cert. denied*, 479 U.S. 823, 107 S.Ct. 92, 93 L.Ed.2d 44 (1986). However, the definition of "questions of law" may be more narrow than that provided for in *Amisub*.