**US WEST COMMUNICATIONS, INC., a Colorado corporation, Plaintiff,**

v.

**Robert J. HIX, et al., Defendants.**

**Civil Action Nos. 97–D–152, 97–D–387, 97–D–1667, 97–D–2047, 97–D–2096, 98–D–934.**

United States District Court, D. Colorado.

July 22, 1999.

Bobbee J. Musgrave, B. Lawrence Theis, Perkins Coie, Denver, CO, Wendy Moser, William Ojile, Ted D. Smith, U.S. West Law Department, Denver, CO, for plaintiff.

Craig D. Joyce, Walters & Joyce, Denver, CO, David DeMuro, Vaughn & DeMuro, Denver, CO, Anthony M. Marquez, Attorney General's Office, Human Resources Section, Denver, CO, Marcy G. Glenn, Robert Pomeroy, Joseph Halpern, Holland & Hart, Denver, CO, Charles B. Hecht, Phillisa Shoemaker, Nichols & Hecht, Denver, CO, Steven H. Denman, Richard L. Corbetta, Melissa A. Dalla, Denman & Corbetta, P.C., Denver, CO, Thomas F. Dixon, MCI Telecommunications Corporation, Denver, CO, Thomas F. O'Neill, III, William Single, IV, Matthew B. Pachman, MCI Telecommunications Corporation, Washington, D.C., Paul M. Gordon, Gordon & Goddard, Oakland, CA, Richard Fanyo, Dufford & Brown, P.C., Denver, CO, Darryl M. Bradford, Kristina M. Entner, Jenner & Block, Chicago, IL, Michael D. Warden, Christopher D. Moore, Sidley & Austin, Washington, D.C., Michael G. McGloin, McGloin, Davenport, Severson & Snow, Denver, CO, for defendant.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

DANIEL, District Judge.

This case involves the Plaintiff, U.S. West Communications, Inc., and the other parties' efforts to challenge certain interconnection agreements approved by the Colorado Public Utilities Commission pursuant to the Telecommunications Act of 1996 (hereinafter "Telco Act"). The Telco Act fundamentally restructured local telephone markets, ending the monopolies that States historically granted to local exchange carriers (LECs) and subjected incumbent LECs to an array of duties intended to facilitate market entry, including the obligation under 47 U.S.C. § 251(c) to share their market with competitors. The other telecommunication parties to this action are competitive local exchange carriers (CLECs) that seek to compete in the local telephone market that has been historically controlled by U.S. West.

Under the Telco Act, when the parties were unable to reach agreement as to the provisions of interconnection agreements, the Colorado Public Utilities Commission became empowered to function as an arbitrator and to decide the terms and conditions of interconnection agreements or those portions thereof where the parties disagreed. Pursuant to 47 U.S.C. § 252(e)(6), a law suit was duly filed in this Court which asked the Court to determine if the Colorado Public Utilities Commission's decisions were consistent with the Telco Act.

The current action before the Court arises from U.S. West and the other companies' dissatisfaction with various aspects of the interconnection agreements approved by the Colorado Public Utilities Commission. The Court heard oral argument on some of the pending matters on December 21, 1998, and will decide the following issues through this Order: (1) U.S. West's challenge to the imposition of "branding" requirements by the Colorado Public Utilities Commission (COPUC); (2) U.S. West's challenge to the imposition of rights-of-way requirements in the AT & T/MCI agreements; (3) U.S. West's challenge to the imposition of various other requirements in the AT & T/MCI agreements; (4) MCI's challenges to the COPUC's failure to include detailed performance standards and a non-compliance mechanism in the interconnection agreements; and (5) U.S. West's challenge to the imposition of liquidated damages and penalties provisions.[1]

---

1. The decisions included in this Order are not impacted by the Supreme Court's decision in *AT & T Corp., et al. v. Iowa Utilities Bd., et al.,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). That decision, while reversing aspects of the Eight Circuit's decision in *Iowa*

## I. *"Branding" Requirements Imposed by the COPUC*[2]

■ Through the Tenth Claim for Relief of its September 29, 1997 Complaint, U.S. West argues that Part A, § 26 of its interconnection agreements with MCI and AT & T violate the First Amendment because that section requires it to represent to MCI's and AT & T's customers that U.S. West is acting on behalf of MCI and AT & T and to remain silent about its own products and services.[3] That is, U.S. West argues that the provision unlawfully requires it to speak on behalf of its competitors and that it unlawfully requires U.S. West to remain silent about its own services. MCI and AT & T argue that § 26 does not violate the First Amendment, and that it is a lawful provision designed to eliminate customer confusion and to promote competition. This Court applies the *de novo* standard of review because U.S. West's First Amendment claim raises a question of federal law. *Bose Corp. v. Consumers Union,* 466 U.S. 485, 508 n. 27, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (applying the *de novo* standard of review to a First Amendment issue).

■ Under the Telco Act, MCI and AT & T are legally entitled to the use of facilities and services they lease from U.S. West. When they use those facilities or resell services to provide local service to Colorado consumers, the new entrant becomes the local service provider for those customers. The COPUC determined that when MCI and AT & T lease or purchase U.S. West's facilities and services, they should be entitled to identify or "brand" themselves as the provider of those services. The COPUC further determined that certain "branding" provisions were required to be included in the parties' agreements in order to avoid customer confusion, and ruled that when U.S. West comes into contact with MCI's or AT & T's customers, U.S. West should be required to inform the customers that MCI or AT & T is providing their local service. (Decision No. C96–1231, Docket No. 96A–345T, Decision Regarding Petition of AT & T for Arbitration, J.A. Vol. 10, Tab 93, at R. 10350–52). The COPUC's decision was subsequently incorporated into § 26 of the parties' interconnection agreement.[4]

■ This issue involves the regulation of commercial speech, and therefore the Court must apply the four-prong test articulated by the Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Under *Central Hudson,* when determining the constitutionality of state regulation of commercial speech, courts must consider the following criteria: (1) whether the regulated speech concerns lawful activity and is not misleading such that the First

*Utilities Bd. v. FCC,* 120 F.3d 753 (8th Cir. 1997), affirmed the FCC's authority to promulgate rules and regulations interpreting the Telco Act.

2. This claim was dismissed as to defendant Sprint. *See* Order filed Sept. 16, 1998, at 2–4.

3. The USWC – MCI Agreement is identical to the USWC – AT & T Agreement.

4. Section 26 states the following:
 26.1 In all cases in which USWC has control over handling of services MCI may provide using services provided by USWC under this Agreement, USWC shall, at MCI's sole discretion, brand any and all such services at all points of customer contact exclusively as MCI services, or otherwise as MCI may specify, or such services shall be provided with no brand at all, as MCI shall determine. USWC may not unreasonably interfere with branding by MCI.
 26.2 MCI shall provide the exclusive interface to MCI subscribers, except as MCI shall otherwise specify. In those instances where MCI requires USWC personnel or systems to interface with MCI subscribers, such USWC personnel shall identify themselves as representing MCI, or such brand as MCI may specify, and shall not identify themselves as representing USWC or any other entity.
 USWC–MCI Agreement, Part A, § 26 (J.A. Vol. 13, Tab 128, at R. 26167); USWC–AT & T Agreement, Part A, § 26 (J.A. Vol. 13, Tab 126, at R. 25020).

Amendment applies; (2) whether the governmental interest advanced by the regulation is substantial; (3) whether the challenged regulation directly promotes the government interest asserted by the state; and (4) whether the regulation is more extensive than is necessary to serve the government interest. *Id.* Applying this test to the facts of this case, the Court finds that the "branding" provisions do not violate U.S. West's commercial speech First Amendment rights.

First, when MCI or AT & T provides local service by using network elements or reselling services purchased from U.S. West, § 26 ensures that customers are not mislead and are properly informed of the identity of their service provider. If U.S. West were permitted to identify itself as the service provider for MCI or AT & T customers, customers could be mislead and U.S. West would gain an unfair competitive advantage. Second, the government has a substantial interest in avoiding customer confusion regarding who is providing a customer's local telecommunications service and in preventing U.S. West, the LEC, from undermining the competition the Telco Act is designed to promote. Third, § 26 has been carefully tailored to promote the government's interest in promoting competition in the local telecommunications market by avoiding confusion regarding the identity of a local service provider. Finally, I find that this provision goes no further than is necessary to achieve the goal of the Telco Act. The provision requires U.S. West to identify accurately who a customer's service provider is, but imposes no affirmative obli-

gation on U.S. West to market MCI's or AT & T's services to consumers. US West is not restricted from advertising or otherwise identifying its own brand in any manner it chooses whenever it is acting on its own behalf.

US West's argument that the agreement unlawfully compels it to speak on behalf of its competitors is groundless. Because § 26 only requires U.S. West to disclose factual information about its products or services, there can be no First Amendment violation. *See, e.g., Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). In addition, § 26 does not require U.S. West to remain silent about its products and services. Unlike the cases cited by U.S. West in its opening brief, § 26 does not include a blanket prohibition against U.S. West's ability to advertise services. For all of these reasons, the Court finds that U.S. West's Tenth Claim for Relief set forth in the September 29, 1997 Complaint should be DISMISSED.

## II. *US West's Challenge to the Imposition of Rights–of–Way Requirements*

 The Ninth Claim for relief in U.S. West's September 29, 1997 Complaint asserts that the COPUC included unlawful rights-of-way requirements in the interconnection agreements, in violation of 47 U.S.C. §§ 251(b) and 224(f)(1). Specifically, U.S. West argues that Attachment 6, § 3.5 of the MCI & AT & T agreements violates the Telco Act because it requires U.S. West to expand its existing rights-of-way on behalf of the CLECs.[5] US West further claims that several sec-

---

5. Attachment 6, § 3.5 of the MCI and AT & T agreements states:

USWC shall offer the use of such Poles, ducts, conduits and [Rights of Way ("ROW") ] it has obtained from a third party to [AT & T/MCI] to the extent the agreement or arrangement for such does not prohibit USWC from granting such rights to [AT & T/MCI]. They shall be offered to [AT & T/MCI] on the same terms as are offered to USWC. USWC shall exercise its eminent domain authority when neces-

sary to expand an existing ROW over private property in order to accommodate a request from [AT & T/MCI] for access to such ROW. [AT & T/MCI] shall reimburse USWC for USWC's reasonable costs, if any, incurred as a result of the exercise of its eminent domain authority on behalf of [AT & T/MCI] in accordance with the provisions of this Section 3.5.

USWC–MCI/AT & T Agreement, Attachment 6, § 3.5 (J.A. Vol. 13, Tab 126 at 25151).

tions of Attachment 6 violate the Telco Act by precluding U.S. West from reserving any capacity to meet its own projected or potential needs. Because U.S. West's challenge is based upon the assertion that the COPUC lacked the authority to impose these requirements, the Court will apply the *de novo* standard set forth in *U.S. West Communications, Inc. v. Hix,* 986 F.Supp. 13 (D.Colo.1997). *See also, GTE v. Morrison,* 6 F.Supp.2d 517, 523–524 (E.D.Va.1998).

At least one other federal district court has rejected the same arguments advanced by U.S. West on this issue based upon the FCC's First Report and Order, *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15499 (1996) *("Local Competition Order").* *See U.S. West Communications, Inc. v. AT & T Communications,* No. C97–1320R, slip op. at 10–12 (W.D.Wash. July 21, 1998); *MCI Telecomm. Corp. v. U.S. West Communications, Inc.,* No. C97–1580R, slip op. at 9–11 (W.D.Wash. July 21, 1998). I likewise reject U.S. West's claim, because I conclude that it is inconsistent with binding rules promulgated by the FCC.

■ Section 251(b)(4) of the Act imposes on each local exchange carrier "[t]he duty to afford access to the poles, ducts, conduits, and rights-of-way of such carrier to competing providers of telecommunications services on rates, terms, and conditions that are consistent with [47 U.S.C. § 224]." 47 U.S.C. § 251(b)(4). Section 224(f)(1) requires that a "utility shall provide ... any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it." 47 U.S.C. § 224(f)(1). US West is a utility and a local exchange carrier under these provisions, and is therefore required to provide MCI and AT & T access to its rights-of-way.

In its *Local Competition Order,* the FCC addressed whether an incumbent LEC, such as U.S. West, is required to provide access to its rights-of-way and expand their rights-of-way on behalf of CLECs like MCI or AT & T. The FCC concluded that because a utility such as U.S. West "is able to take the steps necessary to expand capacity if its own needs require such an expansion," the principle of nondiscrimination requires that it do so, even as to rights-of-way held by the utility, on behalf of other telecommunications carriers. *Local Competition Order* ¶ 1162. Furthermore, the FCC has rejected the argument asserted by U.S. West. *Local Competition Order* ¶ 1181 states:

> We disagree with those utilities that contend that they should not be forced to exercise their powers of eminent domain to establish new rights-of-way for the benefit of third parties. We believe that the utility should be expected to exercise its eminent domain authority to expand an existing right-of-way over private property in order to accommodate a request for access, just as it would be required to modify its poles or conduits to permit attachments. Congress seems to have contemplated an exercise of eminent domain authority in such cases when it made provisions for an owner of a right of way that "intends to modify or alter such ... right of way...."

*Id.* (ellipses in original).

The COPUC was required to apply the FCC's *Local Competition Order* in conducting the arbitration and in approving the Agreement. *See* 47 U.S.C. § 252(c)(1), (e)(2)(B); *Local Competition Order* ¶ 134; *see also Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (noting that it is "well established" that agency regulations have the force and effect of law). The FCC's rules are likewise binding on this Court. *See AT & T Communications, Inc. v. Pacific Bell,* No. C97–0080 SI, 1998 WL 246652, at *2 (N.D.Cal. May 11, 1998) (stating that "This Court may not inquire into the validity of an FCC regulation," and "FCC regulations have the force of law and are binding upon state PUC's and federal district courts"); *Southwestern Bell v. AT & T,* No. A97–

CA–132 SS, slip op. at 3 (W.D.Tex. Aug. 31, 1998) (stating that "FCC rules and regulations which were upheld by the Eighth Circuit ... are controlling and not subject to collateral attack here"); *AT & T v. BellSouth,* 7 F.Supp2d. 661, 674 (E.D.N.C.1998) (stating that "it is not within this Court's authority to review the propriety of an FCC regulation.... Instead, BellSouth's only recourse to challenge any of the FCC's rules is to proceed directly to the Court of Appeals."); *see also FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) (stating that, "[e]xclusive jurisdiction for review of final FCC orders ... lies in the Court of Appeals."); 28 U.S.C. § 2342(*l* ).[6] The Eighth Circuit affirmed these provisions of the *Local Competition Order,* and these provisions were not affected by the recent Supreme Court decision. *AT & T Corp. v. Iowa Utilities Bd.,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999); *Iowa Utilities Bd. v. FCC,* 120 F.3d 753, 819 n. 39 (8th Cir. 1997).

Notwithstanding these directives, U.S. West argues that *Local Competition Order* ¶ 1179 requires consideration of state law in determining whether an incumbent LEC must expand its rights-of-way on behalf of CLECs, and because any telecommunications carrier may exercise eminent domain powers under state law, U.S. West is not required to do so on their behalf. US West's argument is misplaced. Paragraph 1179 requires consideration of state law in determining "[t]he scope of a utility's ownership or control of an easement or right-of-way." *Id.* "[T]he access obligations of section 224(f) apply when, as a matter of state law, the utility owns or controls the right-of-way to the extent necessary to permit such action." *Id.* Thus, once a determination has been made under state law that an incumbent LEC owns or controls a right-of-way, the incumbent has

the obligation to expand that right-of-way in accordance with federal law as set forth in the Telco Act and FCC rules. State law is irrelevant to that inquiry. *See U.S. West Communications, Inc. v. AT & T Communications,* No. C97–1320R, slip. op. at 11–12 (W.D.Wash. July 21, 1998); *MCI Telecomm Corp. v. U.S. West Communications, Inc.,* No. C97–1508R, slip. op. at 10–11 (W.D.Wash. July 21, 1998).

Colorado law provides telecommunications providers, including U.S. West, with the right to use public rights-of-way to create rights-of-way on state-owned land, to contract with private individuals for rights-of-way, and to use eminent domain to acquire title, rights-of-way and easements from private individuals. *See* Colo. Rev.Stat. §§ 38–2–101, 38–5.5–101 *et. seq.* Rights-of-way over which U.S. West has attained ownership or control as determined by Colorado law are thus subject to the obligation imposed by the Telco Act and FCC rules to expand those rights-of-way on behalf of AT & T and MCI.

I agree with the decisions entered by the United States District Court for the Western District of Washington in *US West Communications, Inc. v. AT & T Communications,* No. C97–1320R, slip. op. at 10–12 (W.D.Wash. July 21, 1998) and *MCI Telecomm. Corp. v. U.S. West Communications, Inc.,* No. C97–1508R, slip. op. at 9–11 (W.D.Wash. July 21, 1998). These decisions required U.S. West to expand its rights-of-way by exercising eminent domain on behalf of CLECs. This result is consistent with the Telco Act and its implementing regulations. That fact that either incumbent LECs or new entrants may exercise the power of eminent domain under state law does not alter the fact that once U.S. West's ownership or control of a right-of-way is established under state law, "a competing carrier can have access to U.S. West's right-of-way,

---

6. US West argued at the December 21, 1998 hearing, that the Court should follow the decision in *US West Communications, Inc. v. AT & T Communications,* 31 F.Supp.2d 839 (D.Or. 1998). The Court declines to do so and instead joins the other federal district courts cited above in not permitting collateral attacks on the FCC's *Local Competition Order.*

and consequently, U.S. West's existing network." *MCI Telecomm. Corp.*, No. C97–1508R, slip. op. at 10. The MCI and AT & T agreements appropriately require U.S. West to provide access to its rights-of-way and to expand its rights-of-way, while providing adequate protections to U.S. West. This result incorporates into the agreements the requirements of § 251(b)(4) of the Telco Act and the FCC's implementing regulations.

■ US West's second argument that §§ 3.6, 3.13, 3.18, 3.19, 3.20, and 3.21 of Attachment 6 to the agreements violate the Telco Act by precluding U.S. West from reserving any capacity to meet its own projected or potential needs is without merit. The *Local Competition Order* rejects U.S. West's argument, concluding that the nondiscrimination requirement of § 224(f) prohibits incumbent LECs from reserving excess capacity for future needs when new entrants request use of such capacity. *See Local Competition Order* ¶ 1170 (stating that, "[p]ermitting an incumbent LEC, for example, to reserve space for local exchange service, to the detriment of a would-be entrant into the local exchange business, would favor the future needs of the incumbent LEC over the current needs of the new LEC").[7]

Moreover, the agreements actually do accommodate U.S. West's legitimate need for capacity. For example, U.S. West "may consider safety and reliability in determining whether it has capacity available for [AT & T/MCI's] use." USWC–MCI/AT & T Agreement, Attachment 6, § 3.16 (J.A.Vol. 13, Tab 126, at 25152). US West may also retain a "maintenance spare" of certain facilities as provided in the agreements. *Id.* at § 3.6 (J.A.Vol. 13, Tab 126, at 25151). I agree with the District Court's decisions in *US West Communications, Inc. v. AT & T Communica-*

tions, No. C97–1320R, slip op. at 11 (W.D.Wash. July 21, 1998), and *MCI Telecomm. Corp. v. U.S. West Communications, Inc.*, No. C97–1508R, slip op. at 11 (W.D.Wash. July 21, 1998). In those decisions, the court found that any extra space "either will be used or remain unused, not remain reserved for U.S. West indefinitely, unless safety dictates such a use." *US West Communications, Inc.*, No. C97–1320R, slip op. at 12. Thus, the provisions that U.S. West disputes do not violate the Act, and the COPUC did not act arbitrarily or capriciously or exceed its authority in imposing them. Therefore, the Ninth Claim for Relief set forth in U.S. West's September 29, 1997 Complaint must be DISMISSED.

### III. *The Imposition of Various Other Requirements in the AT & T/MCI Agreements*

■ US West contends in Count Thirteen of its September 29, 1997 Complaint that certain provisions of the interconnection agreements with AT & T and MCI impose "onerous and unlawful" requirements. US West argues that the COPUC violated the Telco Act and exceeded the scope of its authority under the Act by imposing requirements that are "onerous and unlawful." Specifically, U.S. West challenges five provisions of the agreements which require that: (1) U.S. West consult with AT & T in advance of filing tariffs (USWC–MCI/AT & T Agreement, Part A § 3.4 (J.A.Vol. 13, Tab 126, at 25006)); (2) U.S. West provide advance notice to AT & T and MCI of the availability of new products for market testing (USWC–MCI/AT & T Agreement, Attachment 2, § 8.2 (J.A.Vol. 13, Tab 126, at 25049)); (3) U.S. West grant AT & T and MCI access to the Intelligent Loop Con-

---

7. An exception to the nondiscrimination requirement applies to "a utility providing electric service," which may deny a "telecommunications carrier access to its poles, ducts conduits, or rights-of-way, on a nondiscriminatory basis where there is insufficient capac-

ity and for reasons of safety, reliability and generally applicable engineering purposes." Id. § 224(f)(2). US West is not an electric utility, and the FCC refused to expand this exception to include non-electric utilities. *Local Competition Order* ¶ 1173.

centrator/Multiplexer and testing system equipment for routine testing and fault isolation (USWC–MCI/AT & T Agreement, Attachment 3, § 4.4.1.3.6 (J.A.Vol. 13, Tab 126, at 25058)); (4) U.S. West test local switching features at AT & T's and MCI's request (USWC–MCI/AT & T Agreement, Attachment 3, § 15.2.6.1.2 (J.A.Vol. 13, Tab 126, at 25115)); and (5) U.S. West compensate AT & T and MCI for auditing costs (USWC–MCI/AT & T Agreement, Part A, § 23.3 (J.A.Vol. 13, Tab 126, at 25017)). US West characterizes each of these challenges as a claim that the COPUC failed to comply with the Telco Act. AT & T and MCI argue that the Telco Act and FCC regulations grant the COPUC the authority to impose these provisions, and that the record supports them as just, reasonable and nondiscriminatory.

I apply the *de novo* standard of review to this issue insofar as it involves the COPUC's substantive compliance with the Telco Act and the implementing regulations, and the arbitrary and capricious standard with respect to any other issues. *See U.S. West Communications, Inc. v. Hix,* 986 F.Supp. 13, 18–19 (D.Colo.1997); *GTE South v. Morrison,* 6 F.Supp.2d 517, 523–24 (E.D.Va.1998). The Telco Act grants broad authority to state commissions to impose reasonable terms and conditions as part of the arbitration and appeal of interconnection agreements. For example, § 251(c)(2) of the Act imposes upon incumbent local exchange carriers the "duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network ... on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions" of §§ 251 and 252 of the Act. 47 U.S.C. § 251(c)(2). The Telco Act further authorizes a state commission to resolve any "open issues" submitted to it in the arbitration and to impose on the parties such conditions as are necessary to carry out the provisions of § 251 of the Act and

FCC rules. *See* 47 U.S.C. §§ 252(b)(4), 252(c).

Moreover, in its First Report and Order, the FCC stated that it "expect[s] the states will implement the general nondiscrimination rules set forth herein by adopting, inter alia, specific rules ... and any other specific conditions they deem necessary to provide new entrants ... with a meaningful opportunity to compete in the local exchange markets." *Local Competition Order* ¶ 310. This grant of authority enables state PUCs to fashion interconnection agreements into "working documents." *See TCG Milwaukee, Inc. v. Public Serv. Comm'n,* 980 F.Supp. 992, 1000 (W.D.Wisc.1997).

After a review of this voluminous record, the Court has not discovered evidence suggesting that the contested provisions would do anything but give AT & T and MCI the opportunity to compete in the manner contemplated by the Telco Act. Specifically, the requirements that U.S. West consult with AT & T and MCI in advance of filing tariffs and provide advance notice of the availability of new products do not give AT & T and MCI a competitive advantage over U.S. West. Rather, these provisions place the CLECs on equal footing with U.S. West, the incumbent LEC, by minimizing the time in which U.S. West will enjoy a competitive advantage over AT & T and MCI. Similarly, the requirements that U.S. West allow for testing by AT & T and MCI ensure that U.S. West's network is performing according to the Agreements, and that AT & T and MCI are receiving the quality of services for which they bargained. The final provision regarding auditing expenses deters anticompetitive and discriminatory behavior by effectively adopting a "loser pays" standard. This provision requires that the audited party pay for audit expenses in the event of a significant discrepancy in any invoice or in charges paid or payable by the other party. I find that each of these provisions is just, reasonable, nondiscriminatory, and designed to ensure

workable interconnection agreements that encourage meaningful and fair competition in the local exchange market. The CO-PUC did not exceed its authority under the Telco Act in imposing these provisions, and therefore the Thirteenth Claim of U.S. West's September 29, 1997 Complaint is DISMISSED.

### IV. *MCI's Challenges to the COPUC's Failure to Include Detailed Performance Standards and a Non–Compliance Mechanism in the Interconnection Agreements*

■ In Count Eleven of its September 22, 1997 Complaint, MCI challenges the COPUC's decision not to include detailed performance standards and a noncompliance mechanism in MCI's interconnection agreement with U.S. West. The COPUC mandated that U.S. West provide service to MCI that is equal in quality to the service that U.S. West provides itself. Decision No. C96–1337 at 36, A. 103; see also U.S. West–MCI Interconnection Agreement, Part A, § 1.E, A.128 at 2; Att. 4 § 2.1, A.128 at 1. As this issue deals with the COPUC's procedural and substantive compliance with the Telco Act, I will review this issue *de novo*. *US West Communications, Inc. v. Hix*, 986 F.Supp. 13, 19 (D.Colo.1997).

The Telco Act contains no provisions requiring a public utilities commission to create detailed performance standards. *MCI Communications Corp. v. U.S. West Communications, Inc.*, No. C97–1508R, Order on Summary Judgment Motions (W.D.Wash. July 21, 1998). Rather, according to the FCC, the Telco Act only requires that public utilities commissions implement the nondiscrimination rules of the Act by "adopting, inter alia, specific rules ... and any other specific conditions *they deem necessary* to provide new entrants ... with a meaningful opportunity to compete in local exchange markets." *Local Competition Order* ¶ 310 (emphasis added). In *MCI v. U.S. West,* the court found that the Washington state public

utilities commission's use of general standards did not violate the Act, and that unless MCI could demonstrate that "the general standards outlined within the agreement were so unenforceable as to undermine the purpose of the Act," no set of specific standards was required. *Id.* The Court therefore finds that relief on this issue is inappropriate, and DISMISSES Count Eleven of MCI's September 22, 1997 Complaint.

### V. *US West's Challenge to the Imposition of Liquidated Damages and Penalties Provisions*

■ In Count Eight of its September 29, 1997 Complaint against MCI and AT & T, and in Count Six of its August 4, 1997 Complaint against Sprint, U.S. West contends that its interconnection agreements with the Defendants violate the Telco Act because they include "liquidated damages and penalties provisions." US West argues that the COPUC has only limited authority under the Telco Act, and that these provisions exceed that authority. Because this issue involves the COPUC's substantive compliance with the Telco Act, I apply the *de novo* standard of review. *US West Communications, Inc. v. Hix,* 986 F.Supp. 13, 18–19 (D.Colo.1997); *GTE South v. Morrison,* 6 F.Supp.2d 517, 523–24 (E.D.Va.1998).

This issue is similar to the performance standards issue in that, again, the Court finds that the Telco Act does not specifically delineate the powers of the public utilities commissions with respect to these types of provisions. As previously stated, according to the FCC, the Telco Act gives public utilities commissions the authority to "adopt[ ], inter alia, specific rules ... and any other specific conditions *they deem necessary* to provide new entrants ... with a meaningful opportunity to compete in local exchange markets." *Local Competition Order* ¶ 310 (emphasis added); *see also* 47 U.S.C. § 252(b). The liquidated damages and penalties provisions are designed to encourage compli-

ance with the agreements by setting forth clear remedies where a party fails to comply. *See* Decision No. 96C–1337, Docket No. 96A–366T, Decision Regarding Petition of MCI for Arbitration (J.A.Vol. 10, Tab 103, at R. 11513–14). This is certainly within the required scope of the COPUC's authority in that it is designed to provide new entrants with a fair and meaningful opportunity to enter the local exchange market. Further, it is not clear to me that this issue is even ripe for full consideration, as the agreements state only that the parties "remain subject to any applicable liquidated damages provision that *may* be adopted by the Commission." (emphasis added) *See* USWC–MCI Agreement Part A, § 13.4 (J.A.Vol. 13, Tab 128, at R. 26158; USWC – AT & T Agreement Part A, § 13.4 (J.A.Vol. 13, Tab 126, at R. 25011)). For these reasons, I find that Count Eight of U.S. West's September 29, 1997 Complaint against MCI and AT & T, and Count Six of its August 4, 1997 Complaint against Sprint should be DISMISSED.

The Court's rulings, as discussed in this Order, require the dismissal of certain claims for relief asserted by U.S. West and MCI. Accordingly it is,

ORDERED that the Eighth, Ninth, Tenth, and Thirteenth Claims for relief set forth in U.S. West's September 29, 1997 Complaint are DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that Count Eleven of MCI's September 22, 1997 Complaint is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that the Sixth Claim for relief set forth in U.S. West's August 4, 1997 Complaint is DISMISSED WITH PREJUDICE.