MICHIGAN BELL TELEPHONE
COMPANY, d/b/a Ameritech
Michigan, Plaintiff,

v.

Laura CHAPPELLE, Robert B. Nelson
and David Svanda, Commissioners of
the Michigan Public Service Commis-
sion (In Their Official Capacities and
not as Individuals), Defendants.

No. 01–CV–71517.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 12, 2002.

Bruce R. Byrd, Detroit, MI, Sara A. Arons, Pending App., Lansing, MI, Craig A. Anderson, Detroit, MI, Michael G. Vartanian, Jeffery V. Stuckey, Erin E. Gravelyn, John M. Dempsey, Dickinson Wright, Lansing, MI, for Plaintiff.

David A. Voges, Michigan Department of Attorney General, Public Service Division, Michael A. Nickerson, Michigan Department of Attorney General, Corrections Division, Lansing, MI, Robert J. Franzinger, Thomas M. Scher, Dykema Gossett, Detroit, MI, Albert Ernst, Dykema Gossett, Lansing, MI, John R. Harrington, Jenner & Block, Chicago, IL, George Hogg, Jr., Arthur A. LeVasseur, Fischer, Franklin, Detroit, MI, John J. Reidy, III, Pending App., Chicago, IL, for Defendants.

### OPINION AND ORDER

TARNOW, District Judge.

## I. INTRODUCTION [1]

This is an appeal by Plaintiff Michigan Bell Telephone Company, d/b/a Ameritech Michigan ("Ameritech") from a March 19, 2001 decision ("MPSC Order") by the Michigan Public Service Commission ("MPSC"). Plaintiff Ameritech is suing the individual commissioners of the MPSC, Defendants Laura Chappelle, David A. Svanda, and Robert B. Nelson ("Commissioners"), seeking to enjoin implementation of three aspects of the MPSC Order. MCImetro Access Transmission Services ("MCI"), AT & T Communications of Michigan, and TCG Detroit (collectively "AT & T") were granted leave to intervene ("Intervenors").

On November 29, 2001, Defendant Commissioners filed a Motion to Dismiss, and Plaintiff Ameritech filed a Motion for Summary Judgment. The Court held oral argu-

---

1. Law Clerk Amy Harwell provided quality    research assistance.

ment on both motions on April 1, 2002. The Court denied the Motion to Dismiss on April 24, 2002, finding this Court has jurisdiction over the issues raised by Plaintiff Ameritech. Thus, only Ameritech's Motion for Summary Judgment remains before the Court. For the reasons stated below, Plaintiff's Motion for Summary Judgment [19–1] is DENIED and the MPSC Order is AFFIRMED.

## II. BACKGROUND

### A. *Substantive Facts*

#### 1. *Background*

Local telephone service was traditionally provided by state-regulated monopolies, who were each given a distinct operating area and were overseen by state public utility commissions. In 1996, Congress passed the Federal Telecommunications Act, Pub.L. No. 104–104, 110 Stat. 56 (1996) (codified at 47 U.S.C. §§ 151–615b) ("FTA") to deregulate the telephone industry.

Under the FTA, Plaintiff Ameritech is considered an incumbent local exchange carrier ("ILEC" or "incumbent") because it was providing local exchange service prior to the effective date of the FTA. Other companies who are now trying to provide local exchange service are known as competitive local exchange carriers ("CLECs" or "new entrants"). Because the state public utility commissions have extensive experience regulating local phone companies, the FTA gives state commissions a role in the implementation of deregulation. As part of the continuing deregulation process, Ameritech submitted an application to the MPSC for approval of its plan to allow CLECs to use portions of its network. On March 19, 2001, the

MPSC issued an opinion regarding Ameritech's plan, and Ameritech filed this lawsuit seeking an injunction to prevent implementation of three aspects of the MPSC Order.

A telephone company's network is made up of "network elements," which are the equipment and facilities used to provide telephone services. The new entrants into the market lease "unbundled" portions of the incumbent's network, so they can provide services to their own customers.[2] The FTA forbids incumbents from providing network elements on a "discriminatory" basis, or on terms less favorable than what the incumbents provide to themselves. The FTA provides that in determining what network elements should be unbundled and made available to CLECs, the state commissions:

shall consider, at a minimum, whether—

(A) access to such network elements as are proprietary in nature is *necessary;* and

(B) the failure to provide access to such network elements would *impair* the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer.

47 U.S.C. § 251(d)(2) (emphasis added).

There are three network elements that are relevant to the present case: (1) shared transport, (2) operator services/directory assistance ("OS/DA"), and (3) transiting. First, "shared transport," means ILECs must allow CLECs to route calls from the CLEC's customers on the same facilities between offices and switches within the ILEC's network that the ILEC uses to route calls from its own customers. As a practical matter, it is impossible to provide shared transport without also providing unbundled "local switching," which

**2.** The elements are "unbundled" because new entrants are not required to lease the entire network. Instead, incumbents must allow them to lease only the portions, or network elements, they need. The parties refer to these elements as "unbundled network elements" or "UNEs," and the Court will adopt the same terminology.

directs how calls are routed over an ILEC's network.[3] Ameritech does not dispute that it is required to unbundle shared transport in the *local* market, but questions whether it must do so in the local *toll* market. According to Ameritech, "[t]he real dispute here is over the Commission's requirement that Ameritech Michigan must now also carry the toll portion of an end-to-end long distance call for the CLEC's and charge them only a cost-based rate" (P's Brief at 15).[4]

The second network element at issue is operator services/directory assistance ("OS/DA"). Operator services are "any automatic or live assistance to a consumer to arrange for billing or completion, or both, of a telephone call" (Int.'s brief at 9, citing 47 C.F.R. § 51.319(f)). The FCC found that since there is an emerging competitive market for OS/DA services, in some circumstances, incumbents are no longer required to unbundle OS/DA. *In re Implementation of the Local Competition Provisions in the Telecomms. Act of 1996*, Third Report and Order and Fourth Further Notice of Proposed Rulemaking, CC Docket No. 96–98, 15 F.C.C.R. 3696, ¶ 441 (Nov. 5, 1999) ("UNE Remand Order"). However, if the incumbent lacks "customized routing," then the ILEC must continue to provide OS/DA unbundled. *Id.* at ¶ 462. The question, then, is whether the customized routing offered by Ameri-

tech is sufficient to allow it to stop unbundling OS/DA.

Transiting is the third element at issue. The Plaintiff defines transiting as "the use of an incumbent LEC's facilities to transport or transit traffic from a CLEC's switch to a third party's switch" (P's Brief at 45, n. 25). Prior to the MPSC Order, Ameritech was offering transiting on a voluntary basis, but now the MPSC Order requires it to do so, and Plaintiff objects.

### B. *Procedural History*

In a continuing effort to implement the FTA, there have been several proceedings between Ameritech and CLECs before the MPSC. In one such proceeding, Case No. U–12622, Ameritech filed an application with the MPSC for approval of its proposed permanent shared transport offering on September 18, 2000.[5] Several parties were allowed to intervene. After evidentiary hearings, the Administrative Law Judge issued a Proposal for Decision ("PFD") on January 30, 2001. Ameritech, AT & T and MCI filed exceptions to the PFD. On March 19, 2001, the Commission issued its Order ("MPSC Order") that is the subject of this proceeding.

On April 18, 2001, Ameritech filed the present case, seeking to enjoin implementation of three aspects of the MPSC Order. On May 25, 2001, and June 18, 2001, the parties filed a stipulated order granting

---

3. Since shared transport requires local switching, for ease of reference, the Court will simply refer to both as "shared transport."

4. The Plaintiff defines an "end-to-end call" as one that includes all three possible elements of a toll call: 1) the call's origination, 2) toll haul portion, and 3) the call's termination (P's brief at 16). The Plaintiff's example helps clarify this concept. A customer in California originates a long distance call to Michigan. The California customer is a Pac Bell end user and uses AT & T for long distance service. The Michigan customer is an Ameritech end user. Pac Bell originates the call, AT & T

carries it across the country, and Ameritech terminates the call. AT & T retrieves the entire retail fee for the call from the California customer. Then AT & T pays Pac Bell and Ameritech "exchange access fees" for the call origination and call termination on their local networks, and pockets the rest for its own costs and possibly some profit.

5. Under the FTA, Ameritech cannot provide interLATA (long distance) services in Michigan until it complies with the competitive checklist found at 47 U.S.C. § 271. Case No. U–12622 involved aspects of Ameritech's compliance with section 271.

AT & T and MCI, respectively, the right to intervene. On November 29, 2001, Defendant Commissioners filed a Motion to Dismiss, and Plaintiff Ameritech filed a Motion for Summary Judgment. On the same date, the Defendants and Intervenors filed their responses, and the Plaintiff filed a joint reply brief to both responses. Defendant Commissioners' also filed a Supplemental Brief in Opposition to Summary Judgment. On March 20, 2002, MCI filed a "Notice of Supplemental Authority."

Oral argument on Commissioners' Motion to Dismiss and Ameritech's Motion for Summary Judgment was held on April 1, 2002. The Motion to Dismiss was denied on April 24, 2002. On May 14, 2002, the Court sent a letter asking each party to advise the Court what effect, if any, the new Supreme Court decision in *Verizon Communications, Inc., v. Federal Communications Commission, et al.,* —— U.S. ——, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002) had on the parties positions. Each party responded by letter to the Court's request. This opinion and order addresses and resolves the pending Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Federal district courts must review questions of federal law *de novo,* but state commission decisions on all other issues are entitled to arbitrary and capricious review. *Michigan Bell Tel. Co. v. MCI Metro Access Transmission Serv., Inc.,* 128 F.Supp.2d 1043, 1051 (E.D.Mich.2001). Another court in this district explained arbitrary and capricious review as follows:

> The arbitrary and capricious standard requires that a district court give deference to the state commission's decisions; the agency's action will be presumed valid if a reasonable basis exists for its decision. [*U.S. West Communications,*

*Inc. v. Hix,* 986 F.Supp. 13, 18 (D.Colo. 1997) ]. This court should not "sit as a surrogate public utilities commission to second-guess the decisions made by the state agency to which Congress has committed primary responsibility for implementing the Act." *U.S. West Communications, Inc. v. Jennings,* 46 F.Supp.2d 1004, 1008 (D.Ariz.1999)....

> Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The Court is not empowered to substitute its judgment for that of the agency.

[*Hix,* 986 F.Supp. at 18].

*MCI Telecomm. Corp. v. Michigan Bell Tel. Co.,* 79 F.Supp.2d 768, 773 (E.D.Mich. 1999).

## IV. ANALYSIS

Under the MPSC Order, Ameritech is required to, among other things: 1) offer unbundled shared transport of intraLATA/local toll calls, 2) offer OS/DA as an unbundled element and 3) provide transiting as a required rather than a voluntary offering. Ameritech challenges each of these three requirements.

### 1. *Shared transport*

■ Ameritech does not dispute that it is required to provide "shared transport" in the local market. The issue is whether Ameritech has to provide shared transport in the intraLATA (or local toll) market.[6] The MPSC concluded that it does, saying

---

6. The parties use the terms "intraLATA" and "local toll" interchangeably. To reduce confusion, the Court will use the term "intra-

Ameritech must "make its shared transmission facilities available for routing intraLATA traffic, including traffic that would be rated as toll calling under Ameritech Michigan's tarriffs." (MPSC Order at 11).

Ameritech argues the MPSC's determination is erroneous for three main reasons. First, Plaintiff says the Commissioners' decision was contrary to federal law because the FCC has not undertaken the required necessary and impair analysis as to the intraLATA market.[7] Second, the Plaintiff argues that the SBC/Ameritech Merger Approval Order [8] does not require the MPSC's result. Finally, Ameritech argues that the MPSC's reliance on state law is misplaced due to preemption.

In response, the Intervenors argue, first, that the FCC has not made any distinction between local exchange and intraLATA, so any order that covers shared transport in the local market includes the intraLATA market too. Second, the Merger Approval Order does require Ameritech to provide intraLATA. Third, federal law does not preempt state law.

Only the second argument, regarding the Merger Approval Order, must be addressed, since the Court finds it is sufficient to affirm the MPSC Order. On July 24, 1998, SBC and Ameritech sought approval from the FCC for SBC's purchase of Ameritech. The FCC was reluctant to approve the merger, so the two companies supplemented their application on July 1, 1999, "by proffering a set of voluntary commitments that they agreed to undertake as conditions of approval" Merger Approval Order at 7. Condition 56 states that within 12 months of the Merger Clos-

LATA" exclusively. "LATA" stands for Local Access and Transport Area. There are five LATAs in Michigan. Calls that originate within one LATA and terminate in a different LATA are considered *inter* LATA calls. Inter-LATA calls include long distance calls that originate within one state and terminate in another state. Calls that originate and terminate within the same LATA are known as *intra* LATA calls. Each LATA is further carved into "local calling areas." IntraLATA *toll* calls are calls between local calling areas. Purely local calls are ones that stay within one local calling area.

**7.** Plaintiff argues that "[t]he FCC has never found that shared transport must be unbundled for purposes of facilitating entry into the local *toll* market, as the MPSC required here." (P's Brief at 10). In support, the Plaintiff cites the UNE Remand Order at ¶ 379, which says that "requiring incumbent LEC's to provide unbundled access to shared transport is consistent with the FTA's goal of encouraging requesting carriers to rapidly enter the *local* market." (emphasis added by Plaintiff). The Plaintiff argues that the FCC's rulings are silent on the issue of unbundling shared transport in the intraLATA market. That silence, Plaintiff asserts, demonstrates that the FCC never did a specific "necessary"

and "impair" analysis in the intraLATA market, as required by 47 U.S.C. § 251(d)(2) of the FTA, before ILECs can be compelled to unbundle a network element. *See AT & T Corp. v. Iowa Util. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). In *AT & T*, the Court vacated portions of 47 C.F.R. § 51.319 for allowing an application of the "necessary" and "impair" analysis that was too permissive. *Id.* at 392, 119 S.Ct. 721. The Court rejected the notion that an ILEC is required to turn over as much of the network as is technically feasible. *Id.* at 391, 119 S.Ct. 721. Applying *AT & T* to this case, Plaintiff argues that in the absence of a necessary and impair analysis on intraLATA, it cannot be required to unbundled shared transport in the intraLATA market.

Plaintiff also argues that since there is already a competitive market for local toll services, even if the necessary and impair analysis were undertaken, it would not require unbundling of shared transport in the intraLATA market

**8.** *In re Applications of Ameritech Corp. and SBC Communications, Inc.*, Memorandum Opinion and Order, CC Docket No. 98–141, 1999 WL 1337659 (Oct. 8, 1999) ("Merger Approval Order").

ing Date, "subject to state commission approval and the terms of any future Commission orders regarding the obligation to provide unbundled local switching and shared transport," SBC/Ameritech is required to offer shared transport in the Ameritech states "under terms and conditions... that are substantially similar to (or more favorable than) the most favorable terms SBC/Ameritech offers to telecommunications carriers in Texas as of August 27, 1999" (Merger Approval Order, Conditions at ¶ 56). In the MPSC Order, the Commission noted that the Texas Public Utility Commission, on November 4, 1999, in interpreting an interconnection agreement between SBC and Birch Telecom of Texas, found the agreement *requires* SBC to provide shared transport for intraLATA calls in Texas (the "Texas Birch Decision"). The MPSC also noted that the Texas decision was based on a record created before August 27, 1999. Consequently, the MPSC concluded that since SBC was offering shared transport for intraLATA calls in Texas before August 27, 1999, Ameritech was required to provide the same in Michigan under condition 56 of the Merger Approval Order.

Ameritech objects to this finding for two reasons. First, Ameritech argues the

Merger Approval Order states that condition 56 is subject to "any future Commission orders regarding the obligation to provide unbundled local switching and shared transport" Merger Approval Order at ¶ 56. Ameritech argues that the UNE Remand Order is a subsequent order that supercedes the Merger Agreement. According to Ameritech, the UNE Remand Order only requires Ameritech to provide "shared transport" in the *local* market. *See supra,* fn. 6. Consequently, Ameritech concludes, the UNE Remand Order supercedes condition 56 in the Merger Approval Order, such that Ameritech is not required to provide shared transport in the intra-LATA market.

■ The FCC has recently considered and rejected this argument for two reasons. On March 20, 2002, the Intervenors submitted supplemental authority to the Court. It is a "Notice of Apparent Liability for Forfeiture" ("Forfeiture Notice") issued by the FCC on January 18, 2002 against SBC/Ameritech for $6,000,000 for "refusing to offer shared transport to be used to provide intraLATA toll" in violation of the Merger Approval Order, condition 56. Forfeiture Notice at ¶ 2.[9]

---

**9.** At oral argument, Plaintiff's counsel argued that the Forfeiture Notice should not carry much weight because is not a final, binding order by the FCC. He explained that it is more akin to an indictment or a show cause order, where Ameritech has been given a chance to respond, and a final decision by the FCC is forthcoming. Plaintiff's counsel conceded, however, that if the order were to become final, it would preclude Ameritech's position in this case.

The Intervenors correctly assert that Ameritech has already had three opportunities to respond to the FCC's allegation that Ameritech has "willfully and repeatedly violated" condition 56 of the Merger Approval Order. Forfeiture Notice at ¶¶ 1, 4. Therefore, they argue the Forfeiture Notice is more akin to a reconsideration motion than a show cause.

The Court concludes that while the Forfeiture Notice is not a final order, each of the arguments presented by Ameritech have been considered and rejected by the FCC, and such a determination is entitled to deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."). Thus, the Court will give deference to the FCC's conclusions interpreting the Merger Approval Order, the UNE Remand Order, and the Texas Birch Decision, especially since the FCC had before it the *exact* same arguments Ameritech raises here.

First, rejecting Ameritech's argument that the UNE Remand Order supercedes the Merger Approval Order, the FCC said that the UNE Remand Order was issued three weeks before the Merger Approval Order, so it cannot be considered a "future Commission Order" (Forfeiture Notice at ¶ 17) ("We reject the suggestion that the Commission would have imposed a merger condition that had already been superseded by other events that were obviously well-known to the Commission at the time the [Merger Approval Order] was adopted.").

Second, the FCC, addressing Ameritech's substantive argument that the UNE Remand Order only applies to local markets, said that even if the UNE Remand Order is considered a future order, there is no express restriction in the UNE Remand Order to keep Ameritech from being required to unbundle shared transport in the intraLATA/local toll market. The FCC found that:

> SBC argues that the obligation to provide shared transport extends only to the use of that UNE in connection with purely local service, not intraLATA toll. As noted above, however, the definition of shared transport in the UNE Remand Order ... contains no such express restriction, and the Commission's rules generally prohibit ILEC's from imposing new restrictions on UNEs.

Forfeiture Notice at ¶ 18 (footnote omitted).

Ameritech's second argument is that the Texas Birch Decision was issued on November 4, 1999, after August 27, 1999. Plaintiff argues the Texas decision establishes that SBC was not voluntarily offering intraLATA services, but was ordered to provide intraLATA over two months

after the Merger Approval Order in a post-dialing parity [10] environment. Ameritech says that, "to the extent [SBC] was provisioning intraLATA toll calls over its shared transport network prior to November 4, 1999, it was doing so involuntarily" (P's Brief at 27). Plaintiff asserts that SBC was only carrying intraLATA traffic in Texas in a pre-dialing parity environment. Dialing parity was established in Texas after May 7, 1999. Dialing parity existed in Michigan before August 27, 1999, so "the pre-intraLATA toll dialing parity provisioning of intraLATA toll over the shared transport network in Texas would not have been portable to Michigan even if it could have been construed as a voluntary offer, which it was not" (P's Brief at 27).

The Intervenors respond that this argument is "wrong and irrelevant." First, "it is wrong because the Texas Birch Decision interpreted SBC's obligations under an existing negotiated interconnection agreement, and did not purport to impose obligations on Ameritech outside of the requirements of the interconnection agreement to which Ameritech agreed" (Int.'s Brief at 35). Second, it is irrelevant because it does not matter whether SBC was *voluntarily* providing shared transport for intraLATA calls, since the Merger Approval Order requires Ameritech to provide shared transport on the same terms that SBC offered in Texas, without regard to whether it was a voluntary or a required offering (*Id.*).

Ameritech's second argument also fails, again for reasons contained in the Forfeiture Notice. The FCC stated, "[o]n August 27, 1999, SBC had at least two interconnection agreements in Texas pursuant

---

**10.** Plaintiff says that dialing parity is the "ability of an end user to access his or her pre-selected intraLATA toll carries by simply dialing 1+area code and phone number,"

rather than having to dial an access code, such as 10–xxx, to get around the incumbent LEC's toll service (P's Brief at 26, n. 18).

to which it offered CLEC's the option of using shared transport to route intra-LATA toll calls, without restriction, between their end user customers and customers served by SBC." Forfeiture Notice at ¶ 7. The FCC specifically referenced the Texas Birch Decision. In Texas, SBC was offering intraLATA shared transport in a pre-dialing parity environment. SBC notified the CLECs that it intended to stop offering shared transport after dialing parity. Two Texas CLECs objected, and the dispute went to arbitration. In arbitration, SBC maintained that the interconnection agreements "provided that shared transport could be used for end-to-end routing of intraLATA toll calls *only until the implementation of intraLATA dialing parity,* and that SBC's proposed routing change therefore did not conflict with the agreements" *Id.* at ¶ 10 (emphasis in original). In November 1999, an arbitration panel decided that the agreements did not allow a limitation based on dialing parity. *Id.* at ¶ 11. Thus, "the Texas [arbitration panel] has interpreted agreements that were in place on August 27, 1999 as offering CLECs the ability to use the shared transport UNE to route intraLATA toll calls end-to-end." *Id.* The FCC specifically found that the obligation to provide intraLATA service was an existing one under the agreements, not a new one imposed by the Texas arbitration panel. *Id.* at ¶ 13.

The Court is persuaded that the MPSC and the FCC have correctly interpreted the Merger Approval Order, the UNE Remand Order, and the Texas Birch Decision on the issue of shared transport for intraLATA calls. Ameritech's Motion for Summary Judgment is DENIED and the MPSC's Order is AFFIRMED.

### 2. *Operator Services/Directory Assistance*

In its Order, the MPSC ruled that Ameritech must continue to offer OS/DA un-

bundled. Ameritech claims the OS/DA ruling is erroneous for two reasons: (1) it violates due process, and (2) it is contrary to federal law.

■ Ameritech's due process objection is that the MPSC gave notice that they were going to decide this issue in Case No. U–12320, and then decided it in this case, U–12622, without notice that they were going to do so. According to Ameritech, the only notice it had that the OS/DA decision would be made in U–12622 was AT & T's attempt to re-inject something already decided in the earlier case. Thus, Plaintiff argues that the Commission's decision should have been limited to the narrow issue raised by AT & T. Finally, Plaintiff says that the Commission's ruling in U–12320 contradicts the present ruling. Plaintiff concludes that the decision process was "procedurally defective, its decision resulted in the deprivation of Ameritech Michigan's property, and its decision must be reversed" (P's Brief at 36).

The Intervenors assert that all the Commission is required to do to satisfy due process is "provide litigants the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)." The Intervenors emphasize the MPSC Order stated that Ameritech misread the Order in Case No. U–12320 and that case did not decide whether OS/DA had to be unbundled. MPSC Order at 20 ("By accepting Ameritech Michigan's commitment to file an OS/DA tariff, the Commission made no findings regarding whether Ameritech Michigan was under a continuous obligation to offer OS/DA as [an unbundled network element]."). The Commissioners add that their interpretation of what their own order covered should be afforded deference. Both Intervenors and the Commissioners assert that the Plaintiff was allowed to present testi-

mony in this case—two briefs after the evidentiary hearing, and then a third brief after the initial proposed decision.

Ameritech counters that its testimony only responded to the narrow issue AT & T injected into U–12622, not the broader issues, which it thought were being fully addressed in U–12320. Ameritech argues that this amounted to a "bait-and switch," which even an abundance of administrative proceedings or opportunities for testimony cannot cure.

The Court finds the due process afforded Ameritech was adequate. Ameritech was given notice by the ALJ's decision that Case No. U–12622 is where the OS/DA decision would be made, and then it had the opportunity to file subsequent pleadings. In addition, the timing between the order Ameritech asserts should have resolved this issue and the MPSC Order is merely the difference between January 2001 and March 2001. Finally, the Court defers to the Commission's interpretation of its own orders that the U–12320 decision did not resolve the OS/DA in Ameritech's favor, and, therefore, the U–12622 ruling does not conflict with the ruling in U–12320.

■ Second, Ameritech argues that the MPSC's decision was contrary to federal law. The FCC announced that incumbent LECs no longer have to provide OS/DA as UNE, as long as the ILEC provides customized routing for OS/DA traffic. UNE Remand Order at ¶ 441. The Commission, however, found that Ameritech's customized routing is inadequate, so Ameritech

still has to provide OS/DA on an unbundled basis. The Commission ruled:

> The record supports the ALJ's finding regarding the infeasibility and limited usefulness of the customized routing that Ameritech Michigan proposes to accommodate the CLECs' OS/DA requirements. The record indicates that providing this type of customized routing as the only alternative to purchasing Ameritech Michigan's wholesale OS/DA services at market prices (set by Ameritech Michigan) would require each CLEC to establish dedicated trunks to every end office it serves. The Commission finds that this alternative would be costly, inefficient, and burdensome.

MPSC Order at 21.

Ameritech argues that no CLECs are claiming such customized routing is not being provided. Instead, Ameritech characterizes the CLECs complaint as being that "the offering was not to their liking." (P's Brief at 39). Ameritech says that it cannot be compelled to make an optimal offering, just be compelled to offer one that works. Ameritech argues that the Commission's finding that its customized routing is inadequate is not based on any evidence in the record, but merely on parties' unsupported arguments. In addition, Ameritech argues that the FCC approved this exact customized routing in Kansas and Oklahoma, so the Commission's Order is in violation of the FCC's ruling on this issue.[11]

The Intervenors respond that Ameritech "makes the astonishing claim that it is

---

**11.** Plaintiff makes two other arguments. The first is that AT & T routing proposal is technologically not feasible. However, the Court declines to address because, as the Intervenors indicate, the Commission did not adopt AT & T's argument. *Michigan Bell Tel. Co.,* 128 F.Supp.2d at 1051 ("justifications of the MPSC's decision made by it and MCI that differ from, or are in addition to, those articulated in the decision, are rejected by this Court."). Second, Ameritech argues that the Commission's reliance on state law violates federal law because federal law does not require Ameritech to unbundle the OS/DA. The Court does not address the state law question because the MPSC's decision can be upheld on federal law grounds.

irrelevant under federal law whether the custom routing Ameritech offers is inadequate, and that federal law only *implicitly* requires that Ameritech's proffered custom routing even work *at all* " (Int.'s Brief at 41) (emphasis in original). The Intervenors call this a "blatantly anti-competitive misreading of federal law," (*Id.*) because the UNE Remand Order requires unbundling if there is a "[l]ack of a customized routing solution that enables competitors to rout traffic to alternative OS/DA providers would ... effectively preclude [new entrants] from using such alternatives." UNE Remand Order at ¶ 462. The Intervenors argue that the Commission's ruling was correct because Ameritech's offering is "woefully inadequate" (Int.'s Brief at 40). In particular, the Intervenors say that Ameritech's routing requires a new entrant to "build dedicated trunks to every one of Ameritech's nearly 200 end offices in order to use the routing," and that Ameritech's proposed custom routing uses signaling protocols incompatible with some used by new entrants (*Id.*). They conclude that the Commission correctly found that "the record supports the ... finding regarding the infeasibility and limited usefulness of the customized routing" proposed by Ameritech and that Ameritech's alternative is "costly, inefficient, and burdensome." MPSC Order at 21. Finally, the Intervenors assert that Ameritech's argument that the Kansas/Oklahoma Order involves a routing arrangement that is "precisely the same" is unsupported. Instead, they argue the Kansas/Oklahoma Order does not indicate that the FCC approved requiring new entrants to build dedicated trunks to every end-office, as Ameritech proposes here.

The Court defers to the MPSC's factual finding that Ameritech's customized routing alternative is "costly, inefficient, and burdensome." MPSC Order at 21. State commission decisions on factual issues are subject to arbitrary and capricious review.

*MCI Telecomm. Corp.,* 79 F.Supp.2d at 773. There is nothing contained in Ameritech's arguments that suggests the MPSC arbitrarily or capriciously decided this issue. Therefore, the Court DENIES Ameritech's Motion for Summary Judgment and AFFIRMS the MPSC Order under the deferential arbitrary and capricious standard of review that this Court must apply.

### 3. *Transiting*

Ameritech was offering transiting unbundled voluntarily, but after the MPSC Order, Ameritech is required to offer transiting. Ameritech argues that federal law does not require transiting be unbundled, and thus, the MPSC's order impermissibly exceeds its authority in imposing such a requirement. Plaintiff states that this ruling is "perhaps the most egregious display of the Commission's fundamental and repeated refusal to abide by the principles of federal preemption in undertaking its regulatory duties" (P's Brief at 46). Specifically, Ameritech argues that the FCC did not include transiting in its definition of shared transport. The FCC's definition of shared transport is "transmission facilities shared by more than one carrier, including the incumbent LEC, between end office switches, between end office switches and tandem switches, and between tandem switches, in the incumbent LEC network" 47 C.F.R. § 51.319(d)(1)(iii). Ameritech argues that, since this definition does not include transiting, "incumbent LECs have no duty to offer shared transport for transit purposes" (P's Brief at 47). In fact, the FCC stated "[w]e therefore clarify here that incumbent LECs must offer only dedicated transport, and not shared transport, between their switches, or serving wire centers, and requesting carriers' switches." *In re Implementation of the Local Competition Provisions in the Telecomms. Act of 1996,* Third Order on Reconsideration

and Further Notice of Proposed Rulemaking, CC Docket Nos. 96–98, 12 F.C.C.R. 12460 (Aug. 18, 1997) ¶ 28 ("Third Order on Reconsideration"). Ameritech says that the MPSC claim that nothing in the FCC's definition forecloses the Commission from imposing a transiting requirement under the Michigan Telecommunications Act "is tantamount to suggesting that the MPSC is free to alter the FCC's very definition of shared transport" (P's Brief at 46). Finally, they argue that state law offers no comfort because it is preempted by federal law.

The Intervenors argue, first, that this claim is not ripe for decision because Ameritech is currently offering transiting, citing *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). Second, the Intervenors state that it would cost Ameritech more not to provide transiting than it does to provide it.[12] Third, they argue that the FCC's definition of shared transport has no bearing on this case. They agree with the MPSC's finding that "there is simply no indication that the FCC intended to address transiting in those orders—certainly the orders themselves do not mention transiting at all" (Int.'s Brief at 46). Instead they argue:

> the FCC's statement regarding "dedicated" transport from "requesting carriers' switches" on its face has no application to transiting. As noted above, a new entrant that uses shared transport must also use Ameritech's switching facilities. Accordingly, when a new entrant uses Ameritech's shared transport, there is no transport from the switch of a "requesting carrier"

(Int.'s Brief at 46). They contend that in the only order that actually mentions transiting is the Merger Approval Order,

where the FCC specifically required Ameritech to provide transiting using shared transport until it obtained final approval of a shared transport plan. Merger Approval Order at ¶ 55(a). They assert that the FCC would not have imposed a transiting requirement if it were against the FCC's own rules. Finally, they argue that state law is not preempted because states are allowed to impose additional pro-competitive requirements that do not conflict with federal laws.

The Defendant Commissioners add to the Intervenors' argument citing the savings clause of the FTA, which states:

> (c) **Additional State Requirement**— Nothing in this part precludes a State from imposing requirements on a telecommunications carrier for intrastate services that are necessary to further competition in the provision of telephone exchange service or exchange access, as long as the State's requirements are not inconsistent with this part or the Commission's regulations to implement this part.

47 U.S.C. § 261(c). They conclude that since the FCC did not impose a prohibition against requiring transiting, state law is not in conflict with federal law, and their ruling should be upheld.

Thus, there are three questions for the Court. First, is this issue ripe? In support of their argument that it is not ripe, the Intervenors rely on *Iowa Utils. Bd.*, where the Supreme Court held that "[w]hen as is the case with this Commission statement, there is no immediate effect on the plaintiff's primary conduct, federal courts do not entertain pre-enforcement challenges to agency rules and policy statements." 525 U.S. at 386, 119 S.Ct. 721. Ameritech states that the Intervenors' reliance on *Iowa Utils. Bd.* is

---

12. The Court will not address this argument because it has no bearing on what federal and state law require regarding transiting.

misplaced, since that involved the FCC's pronouncement that they could review agreements approved by state commissions, but the FCC had not yet tried to exercise such review. Since no rights had been affected, the Supreme Court declined to review it on ripeness grounds. Here, the Plaintiff argues that its legal rights were affected, because they can no longer choose to stop offering transiting. *Cf. U.S. v. Los Angeles & S.L.R. Co.,* 273 U.S. 299, 309–10, 47 S.Ct. 413, 71 L.Ed. 651 (1927) ("The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation.").

■■■ The Court finds that this claim is ripe for review. The ripeness doctrine mandates that courts "decide only existing, substantial controversies, not hypothetical questions or possibilities." *City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1089 (6th Cir.1989). In assessing ripeness, courts must consider whether (1) the issues are fit for judicial decision, and (2) the hardship to the parties if judicial review is delayed. *Dixie Fuel Co. v. Comm'r of Soc. Sec.,* 171 F.3d 1052, 1058 (6th Cir.1999). Under the first prong, an issue is fit for review, for example, if the agency action is final, or if the plaintiff raises a purely legal question. *Id.* Here, the MPSC Order is both a final order and a purely legal question. As for the second prong, the Court finds the MPSC's Order has altered Ameritech's legal rights because they can no longer stop offering transiting without being subject to a lawsuit. *See Satellite Broad. and Communications Ass'n v. F.C.C.,* 275 F.3d 337, 369 (4th Cir.2001) ("any hardship considerations weigh in favor of deciding the questions now because the broadcasters have an interest in knowing which packaging options for local broadcast stations will be available to satellite subscribers when the care one, carry all rule takes effect."). Thus, this issue is ripe for review.

■■■ The second question for the Court is whether the FCC's definition of shared transport, 47 C.F.R. § 51.319(d)(1)(iii), and the Third Order on Reconsideration preclude mandatory transiting. Both parties agree that transiting is not expressly mentioned by either definition. Ameritech states, however, that the FCC's definitions mean incumbent LECs have no duty to offer shared transport for transit purposes. The Intervenors, however, assert that neither definition has anything to do with transiting, which they define as transport between a CLEC and a third party. Instead, they argue, the FCC definition only addresses transport between the ILEC and the CLEC.

The Court agrees with the MPSC and Intervenors that the FCC's shared transport definition and the Third Order on Reconsideration do not preclude mandatory transiting. All the parties agree that "transiting" is the use of an ILEC's facilities to transport traffic from a CLEC to a third party (P's Brief at 45, n. 25, Int.'s Brief at 15). The FCC also agrees with this definition. *See Qwest Corp. v. F.C.C.,* 252 F.3d 462, 468 (D.C.Cir.2001) (citing *TSR Wireless, LLC v. U.S. WEST Communications, Inc.,* 15 F.C.C.R. 11,177 n. 70, 2000 WL 796763 (2000)) (the FCC defines "transiting traffic" as "traffic that originates from a carrier other than the interconnecting LEC but nonetheless is carried over the LEC network to the paging carrier's network"). After comparing the definition of transiting to the shared transport definition and the Third Order on Reconsideration, the Court finds the

FCC was not discussing transiting. Both only involve transit between the ILEC and the CLEC. For example, the Third Order on Reconsideration states, "incumbent LECs must offer only dedicated transport ... between *their* switches ... and requesting carrier switches." ¶ 28 (emphasis added). There is no mention about traffic between a CLEC and a third party. The Court finds Ameritech's attempts to argue that transiting is precluded by the FCC's shared transport definition and the Third Order on Reconsideration unavailing; federal law does not preclude mandatory transiting.

Thus, the third question for the Court is whether state law allows imposition of mandatory transiting. The answer is simple after resolution of the question above. Since federal law does not preclude mandatory transiting, under the FTA's savings clause, the MPSC is allowed to impose additional pro-competitive requirements under state law. *See* 47 U.S.C. § 261(c). The Court defers, under arbitrary and capricious review, to the MPSC's interpretation of state law on the transiting issue. *MCI Telecomm. Corp.*, 79 F.Supp.2d at 773. Therefore, the Court DENIES Plaintiff's Motion for Summary Judgment and AFFIRMS the MPSC's decision regarding transiting.

## V. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff Ameritech's Motion for Summary Judgment [19–1] and AFFIRMS the Michigan Public Service Commission's Order dated March 19, 2001, on all three issues before this Court: shared transport for intraLATA calls, operator services/directory assistance, and transiting. A judgment will be entered accordingly.